STATE OF MINNESOTA *vs.* JOHN J. RING.

January 13, 1882.

County Treasurer—Embezzlement—Requisites of Indictment.—In an indictment for embezzlement by a county treasurer, committed by a refusal to deliver to his successor in office the moneys in his hands, it is not necessary to set forth all of the steps by which such successor became county treasurer. It is enough to allege that he was duly appointed by the board of county commissioners, duly qualified, and thereby became the successor in office of the defendant, without alleging that a vacancy existed in the office, by reason of which the right to make such appointment existed. But, if the indictment purports to set forth particularly the means by which the appointee became county treasurer, and some event, legally necessary to that end, is not averred, the particular allegations modify and control the general averment of the ultimate fact, and such fact is not well pleaded.

Same—Averment and Proof of Gross Sum Received.—It is not necessary that an indictment for embezzlement of money set forth the whole amount of money received by defendant, a part of which is alleged to have been embezzled. Under an indictment alleging the receipt of a gross sum " exceeding " a sum named, proof may be made of the receipt of any amount, although it greatly exceed the sum thus named.

Same—Evidence—Semi-Annual Statement—Omission of Dollar-Mark. The semi-annual official statement of moneys in the county treasury, required by statute to be made by county treasurers, and shown to have been executed by the defendant, is competent evidence of the amount of money in his hands, although the amount of money therein expressed is only indicated by figures, without other index of denomination than the separating of the two right-hand figures in a column from the others by a perpendicular line.

**Same—Liability for Taxes Paid—Presumption of Payment in Money.—** A county treasurer is, under the law, chargeable as with money to the amount of all taxes paid to him, although he may receive payment in certain orders. The amounts so charged to him, and upon trial proved to have been paid, are presumed *prima facie* to have been received in money; and it is for the defendant, if he would overcome this presumption, to present proof of the manner of payment.

**Same—Stubs as Evidence of Receipt of Tax.—** The stub duplicates of tax receipts, made by a county treasurer, as required by law, are evidence of the receipt of the tax represented thereby, although they have never been returned by him to the auditor, as he is required to do.

**Public Officers—Failure to pay over Money to Successor in Office.—** The improper neglect or refusal of a public officer to deliver to his successor in office all money remaining in his hands, upon demand therefor, is, under the statute, embezzlement *per se* of such moneys, although no particular sum was demanded.

**Same—Eligibility Presumed.—** A person appointed in regular form to a public office is presumed to have been eligible to such office, in the absence of proof to the contrary.

**Same—Conditional Appointment to Office.—** An appointment to a public office, originally coupled with a condition that was never performed, becomes a valid appointment when the appointing power subsequently, having authority to do so, dispenses with the condition.

**Juror—Power of Court to Exclude.—** The court may exclude from the jury one who is shown to have an insufficient knowledge of our language to enable him to intelligently try the cause, although no challenge was interposed for that reason.

The defendant was indicted and tried in the district court for Scott county, *Macdonald*, J., presiding, for the crime of embezzlement, in failing and refusing to comply with the demand of his successor in the office of county treasurer, to turn over and account for the funds of the county. The jury returned a verdict of guilty, and found the amount embezzled to be $10,736. Defendant appeals from the judgment entered thereon, his motion in arrest of judgment and for a new trial having been denied.

*L. M. Brown*, for appellant.

*William J. Hahn*, Attorney General, for the State.

DICKINSON, J. The defendant was indicted for embezzlement. The indictment alleges the election of the defendant to the office of county treasurer of Scott county, at the general election in November, 1877, his qualifying and entering upon the discharge of his duties on the first day of March following, and that he continued in such office until the 21st day of June, 1880. The indictment then proceeds as follows: "That on the twenty-second day of June, 1880, one Herman Baumhager was, by the board of county commissioners of said county of Scott, duly appointed to the office of county treasurer of said county, and on the twenty-fifth day of June, 1880, duly qualified and entered upon the discharge of his duties as such county treasurer, and thereby became the successor in office of said John J. Ring; and all the time since the qualification of said Herman Baumhager, on the said twenty-fifth day of June, 1880, he has been and now is such county treasurer of said county and acting in that capacity." In the subsequent part of the indictment the defendant is charged with embezzlement by refusing, upon demand made by Baumhager as his successor in office, to pay over to him public moneys received by the defendant as county treasurer, and still remaining in his hands.

The sufficiency of the indictment depends upon the fact as to whether it is sufficiently alleged that Baumhager was county treasurer, and the successor of the defendant in office. To refuse to deliver the money belonging in the county treasury to one not legally entitled to demand and to receive it, would not constitute the crime of embezzlement. The only ground upon which a doubt can rest as to the sufficiency of the indictment in this respect is that it does not allege that there was a vacancy in the office; and, unless there was a vacancy, the commissioners had not authority to make an appointment. But the fact that the indictment does not allege a vacancy is not fatal, unless the instrument is to be construed as assuming to set forth the several steps or proceedings by which Baumhager became treasurer. It was not necessary to allege all such proceedings. The indictment is sufficient in that respect, if it alleges the fact that Baumhager was such officer, and the successor in office of the defendant, and if those allegations are not qualified by particular averment of the proceedings by which he became such. If, however, it appears

that the pleader has assumed to set forth the successive steps upon which the ultimate fact rests, the particular statement of facts controls the general allegation as to the result. *Pinney* v. *Fridley*, 9 Minn. 23, (34.)

We think the indictment sufficient, and that it is not to be construed as purporting to set forth all of the steps by which Baumhager became county treasurer. It is apparent, from the simple allegation that Baumhager was duly appointed and qualified, that the pleader did not assume to set forth the facts which authorized such appointment, and the successive steps taken which constituted Baumhager county treasurer. Hence, from the want of an express allegation of a vacancy in the office, the inference is not to be drawn that there was not such vacancy, and the general allegation of appointment and qualification of Baumhager, that he became the successor in office of the defendant, and that he has been, since the 25th day of June, 1880, such county treasurer, are unqualified, and have their full force as allegations of facts. If, as in the case of *Pinney* v. *Fridley*, the ultimate fact pleaded had depended upon a succession of numerous events, all of which save one had been studiously averred, the omission of that one would have been fatal, for the reason above indicated—that the particular allegation of facts would modify and control the general conclusion.

In making up the jury for the trial of the case, one Bergerman was called as a juror, and challenged on the part of the state for actual bias. After examination upon *voir dire*, and particular interrogation by the court as to his knowledge of the English language, the court excluded the juror upon the ground of general disqualification. No challenge for that cause had been made. The defendant excepted. This was not error. The court was authorized to exclude the juror when it was made properly and sufficiently to appear that he had not such knowledge of the language as to enable him to understand the evidence, the argument of counsel, and the instructions of the court. It is the duty of the court to supervise, and within proper limits to control, the trial of causes before it, to the end that justice may be administered in reality as well as in form. The parties before the court might desire, from different motives, to accept an incompetent

v.29—6

juror,—one entirely unacquainted with our language; but the court is not required to yield its assent to such a proceeding, or take part in such a trial. The parties have the right to challenge for general disqualification; but their neglect to avail themselves of that privilege does not prevent the court from inquiring as to the capacity of a juror to discharge intelligently the duties of his place. From the examination in this case the court was justified in its conclusion that the juror was disqualified.

The indictment alleges that, as county treasurer, defendant, during his term of office, received money of the county to an amount "exceeding the sum of $38,000," and on the 21st day of June, 1880, had in his possession of said moneys the sum of $38,000. Then follow allegations which are claimed to charge an embezzlement of the sum of $18,680.42—part of the before-mentioned sum of $38,000. Upon the trial, the state offered evidence tending to show that the defendant received, during his term of office and prior to June 21, 1880, the sum of $49,140. The defendant objected to such evidence, claiming that the state was concluded by the allegations of the indictment from showing a larger sum received than $38,000. The evidence was properly received. The proof was within the allegations of the indictment, which charged a receipt of a sum exceeding $38,000 during defendant's term of office. It was not necessary that the allegations of the indictment be more specific in respect to the gross sum received by the defendant, or that the whole amount of such receipts be stated at all.

To prove the receipt and possession of public moneys by the defendant, the state offered in evidence the official semi-annual statement for March 1, 1880, signed by the defendant as county treasurer and by the county auditor. The making of the semi-annual settlement and the execution of the official statement were shown. This statement was headed as follows: "We, the undersigned, hereby certify that the following are the true and correct amounts of money in the county treasury, March 1, 1880, belonging to each fund as within stated." The sums set down in figures opposite the names of the several funds have no dollar-marks affixed or other index of the amounts of money represented than this: the figures are in column form, the

two right-hand figures being separated from the rest by a perpendicular line running down the page. The statement was proper evidence to be presented to the jury, (*State* v. *Mims,* 26 Minn. 183,) and they might properly construe it to have been intended to represent cents in the two right-hand figures, and dollars in those standing at the left of the line. This does not conflict with the decision in *Tidd* v. *Rines,* 26 Minn. 201. That may be competent evidence of a fact which has not the certainty and precision in form necessary to express the judgment of a court, the conclusion of the law. It is not important, as respects the admissibility of this evidence, that the statement does not show when the money was received.

The evidence showed that, by resolution of the board of county commissioners, Baumhager was appointed county treasurer with the following proviso: "Provided, however, this appointment is made upon the express condition that the said Baumhager shall give the required bond, and duly qualify as such treasurer, as provided by law, within two days from and after the day of appointment." The bond of Baumhager was not presented to the board for acceptance until three days afterwards, but it was then accepted and approved upon motion in form as follows: "On motion of ——— the bond of Herman Baumhager, county treasurer, appointed as per resolution of this board, was accepted and approved." The appointment was sufficiently shown. It was within the power of the board of commissioners to modify the resolution of appointment by afterwards dispensing with the express condition annexed to it, and the official approval and acceptance of the bond in the terms above given must be regarded as a subsequent modification of the resolution by dispensing with the proviso.

It appears from the case, that the amount which the evidence charges defendant with having received was not all money, but consisted in part of county orders, and, as is claimed, of a considerable amount of town orders. It does not, however, distinctly appear from the record before us that such town orders were received; but the argument proceeded upon that assumption, and we will consider the fact to be so. It is claimed that there can be no conviction of embezzlement of money in such case, without proof on the part of the

state as to a specific sum received in money and converted by the defendant. This position is deemed to be erroneous. All taxes are payable in money, and ordinarily are so paid; and although, for convenience, the treasurer is to receive, in lieu of money payment, certain orders to a certain extent, he is still made chargeable on account thereof as with the receipt of money. By the terms of the statute (Gen. St. 1878, *c.* 11, § 56,) the treasurer is required, upon the payment of any taxes, to give a receipt therefor, and to make a duplicate stub showing the fact, and date of such payment. These duplicate stubs are to be returned to the auditor at the end of each month, and thereupon the auditor is required to charge the treasurer the amount thereof, and this is to be done whether payment is made in money or in orders. Thus by the law itself the treasurer is made chargeable with the receipt of money to the amount of all taxes paid, and is required to account for the sums so charged to him. He is presumed, in the absence of proof of the fact, to have received payment in money. Again, when payments are made otherwise than in money, the manner of payment is a matter peculiarly within the knowledge of the treasurer, and of which the state cannot ordinarily be informed. It is, perhaps, for this reason, in part, that the treasurer is by law made chargeable with the receipt of money to the amount of all payments made to him, and left to meet such presumption with proof of the manner of payment, if made otherwise than in money. See *State* v. *Munch,* 22 Minn. 67. It is probable that the jury in this case deducted from the gross sum shown to have been received by the defendant the amount of all orders shown to have been received by him. The remainder was properly chargeable against him as money.

It appears that there came into the hands of Baumhager, upon his succeeding defendant, some stubs of tax receipts made out by defendant, which Baumhager turned over to the county auditor, and the latter charged the amounts of the same to defendant. It also appears that some of the receipts represented by these stubs were found in the possession of defendant when his successor came into office. It does not otherwise appear whether such receipts had ever been delivered by the treasurer to tax-payers. The stub duplicates of tax receipts

required to be made by the treasurer are official instruments, which he should retain until the end of the month and then return to the county auditor. They are competent but not conclusive evidence against himself of the receipt of the tax, although he has never returned them to the auditor. The fact that receipts represented by such stubs are found in the possession of the treasurer does not necessarily show that the tax has not been paid. It is a fact proper for the consideration of the jury as bearing upon the question of payment.

It is claimed that the conviction is erroneous because there was no evidence that Baumhager was eligible to the office to which he was appointed. From an appointment to a public office regular in form, by a body or officer in whom rests the appointing power, the eligibility of the appointee is presumed. It is not necessary, unless it be so in a case directly involving the issue of his eligibility, to prove that he was a citizen of the United States, or had declared his intention to become such, that he was 21 years of age, and had resided in the state four months prior to such appointment.

The demand made by Baumhager, the refusal to comply with which constitutes the alleged embezzlement, was a demand that the defendant forthwith deliver to him, (Baumhager,) as the defendant's successor in office, "all the public money, books, accounts, papers and documents" in the possession of defendant belonging to the office of county treasurer of said county, without other specification of any particular sum demanded. Gen. St. 1878, *c.* 8, § 173, provides that "each county treasurer, on going out of office, shall deliver to his successor in office all the public money, books, accounts, papers and documents in his possession." Section 36 of chapter 95 provides, in substance, that if any such officer improperly neglects or refuses to pay over public moneys according to the provisions of law, he is guilty of embezzlement. By the last section referred to, the improper neglect or refusal to pay over according to the provisions of law is made *per se* embezzlement. *State* v. *Munch,* 22 Minn. 67. The former section contains the provisions of law applicable to this case. The effect of both sections is to make the improper neglect or refusal of a county treasurer, on going out of office, to deliver to his successor in office all the public money in his hands, embezzlement. Hence,

the demand was sufficient. If Baumhager was in fact the legal successor in office of defendant, it was the duty of the latter to comply with such demand, and a refusal to do so, unless justified by other facts, would be an embezzlement of such moneys as were in his hands, although no specific sum was demanded. The extent of the embezzlement would be determined by proof of the sum then in the hands of defendant.

We have considered the point that the evidence does not sustain the verdict in respect to the amount found to have been embezzled, but find no sufficient reason to disturb the verdict. It is clearly within the amount which the evidence fairly tends to show to be chargeable against the defendant.

Judgment affirmed.